IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GONANNIES, INC. and MONTA CAPRICE SPOONER FLEMING, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:06-CV-0631-L |
| v. | § § | |
| GOAUPAIR.COM, INC., et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Dismiss of Defendant Jacque Bray-Butler, Ph.D. ("Bray-Butler"), filed September 19, 2006. By this motion, Bray-Butler seeks dismissal of Plaintiffs' claims against her for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Having carefully considered the motion, response, reply, supplemental response, supplemental reply,[1] record, legal briefing and applicable authority, the court **grants** the Motion to Dismiss of Defendant Jacque Bray-Butler, Ph.D.

---

[1] The parties were permitted to file supplemental briefing after the court, on November 14, 2006, granted Plaintiffs' Motion for Permission to File Supplemental Response, which was unopposed by Bray-Butler. Plaintiffs had sought permission to file a supplemental response to Bray-Butler's motion to dismiss, contending that she came to her deposition unprepared to identify the ownership of the businesses in which she was involved. The court allowed Plaintiffs ten days from receipt of Bray-Butler's tax returns to file their supplemental response. Bray-Butler's attorneys produced the tax returns at issue and Plaintiffs filed their Supplemental Response on January 18, 2007. Along with their Supplemental Response, Plaintiffs again sought leave of court to be allowed further discovery related to the court's personal jurisdiction over Bray-Butler, and to file a second supplemental response after being allowed further discovery, stating that "[t]he tax returns and related documents produced by Dr. Butler are not helpful at all in determining the ownership of goNANI and goAupair." Plaintiffs' Motion for Permission to File Second Supplemental Response at 6. On March 14, 2007, the court denied Plaintiffs' motion, noting that Plaintiffs had already been permitted to depose Bray-Butler and received leave (which Bray-Butler did not oppose) to file a supplemental response after receiving the requested tax returns, which Bray-Butler willingly produced. The court determined that Plaintiffs had failed to show good cause for any further jurisdictional discovery related to Bray-Butler.

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural Background**

This is a trademark infringement lawsuit related to the trade terms "GoNannies," "GoNannies®," and "goNani," as well as the internet web sites, www.GoNannies.com and www.gonani.com.  Plaintiff GoNannies, Inc. ("GoNannies") is a closely held Texas corporation in the business of matching domestic personnel with families who are in need of such services. Plaintiff Monta Caprise Spooner Fleming ("Fleming") owns 100 percent of GoNannies's stock and is its president.  Defendants are GoAuPair Operations, LLC ("GoAuPair Operations"), a domestic personnel staffing company doing business in Utah; American Cultural Exchange, LLC ("American Cultural Exchange"); and Bray-Butler, an individual residing in Utah.[2]  Plaintiffs filed this lawsuit on April 7, 2006, following their alleged March 1, 2006 discovery that Defendants were using the name "goNANI."  On March 20, 2006, Plaintiffs' counsel sent a letter to certain of Defendants, asking that they cease and desist from using the confusingly similar terms "goNANI" in association with their business in order to prevent customer confusion.  In their First Amended Complaint, filed September 5, 2006, Plaintiffs allege that Defendants' use of "goNANI," which they allege is almost identical and confusingly similar to their federally registered trademark, "Go nannies," constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*  Plaintiffs also allege unfair competition under the common law, false designation of origin and deceptive trade practices, along with violations of the Anticybersquatting Consumer Protection Act, in connection with Defendants' use of the term "goNANI" and the website www.gonani.com.  With regard to

---

[2]A. William Kapler, III, manager of GoAuPair Operations, was originally a party to this suit.  On October 2, 2006, he filed a motion to dismiss for lack of personal jurisdiction.  In Plaintiffs' Response, Plaintiffs agreed to dismiss him from the lawsuit.  The court issued an order on February 26, 2007, granting Kapler's motion to dismiss and dismissing Plaintiffs' claims against him without prejudice.  GoAuPair.com, Inc. was also a party to this lawsuit. Plaintiffs have stipulated to the dismissal without prejudice of GoAuPair.com, Inc., as the entity does not exist.

**Memorandum Opinion and Order – Page 2**

Defendants' use of "goNANI" with an ® designation, Plaintiffs have sued Defendants for false advertising and misusing the statutory notice of ® in connection with the unregistered term "goNANI." Plaintiffs allege "upon information and belief" that following the March 20, 2006 letter, and continuously after that date, "Defendants have been distributing, selling and marketing products and/or services under the disputed term goNANI and through the operation of [infringing websites], resulting in consumer confusion as to the source of the product and/or service." Compl. ¶ 43.

Defendants have counterclaimed against Plaintiff Fleming seeking, among other things, cancellation of her registered "Go Nannies" mark due to Defendants' prior use of "goNANI." Fleming denies the counterclaim and has asserted affirmative defenses.

On September 15, 2006, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction seeking an order from the court barring Defendants GoAuPair Operations and Kapler from using the term "goNANI" and using the symbol ® in connection with "goNANI." Plaintiffs did not seek injunctive relief against Bray-Butler. By order dated September 19, 2006, the court denied Plaintiffs' Emergency Motion for Temporary Restraining Order, after considering, among other things, the extensive delay between Plaintiffs' filing of this lawsuit and seeking a temporary restraining order. By order dated December 7, 2007, the court denied Plaintiffs' Motion for Preliminary Injunction, finding that Plaintiffs had failed to meet their burden of showing a substantial likelihood of prevailing on the merits of their Lanham Act trademark infringement claim, specifically in light of "copious evidence" presented by Defendants of extensive prior use of the term "goNANI" by Defendants and Explorer Learning. *See* Mem. Op. And Ord. at 6. The court also determined that Plaintiffs had failed to demonstrate that they would suffer

immediate and irreparable injury for which they have no adequate remedy at law if injunctive relief was denied. *Id.* at 7-9.

The following facts pertinent to resolving Bray-Butler's motion to dismiss for lack of personal jurisdiction are taken from the evidence before the court contained in the parties appendices submitted with their supporting briefs, including affidavits, exhibits and deposition transcripts, and Plaintiffs' First Amended Complaint, which is in large part verified.

Bray-Butler is a resident of Utah. Bray-Butler owned Exploring Cultural and Educational Learning, Inc. ("Exploring Learning") until its corporate expiration on October 23, 2004. Exploring Learning was a Utah corporation with its principal place of business in Utah. Prior to January 1, 2004, Exploring Learning owned, operated and managed a business engaged in providing childcare and doing business as "goNANI."[3] On January 1, 2004, GoAuPair Operations and American Cultural Exchange purchased substantially all of the assets of Exploring Learning. Bray-Butler never owned, controlled or managed GoAuPair Operations or American Cultural Exchange. Bray-Butler never operated the entity doing business as "goNANI" as a sole proprietorship. Between its inception in 2000 and January 1, 2004, the date GoAuPair Operations and American Cultural Exchange purchased Exploring Learning, the d/b/a "GoNANI" was at all times run by a board of shareholders and a corporate entity, either Childcrest, Inc. (until approximately July 2002) or Exploring Learning (from sometime in 2002 until GoAuPair Operations purchased its assets).

Explorer Learning began using "goNANI" as a trade name in or around 2000. Sometime in 2000, Explorer Learning launched a website at www.gonani.com. From the time GoAuPair

---

[3] The submissions before the court show that Explorer Learning also owned an entity named "GoAuPair," a government-authorized program that brings au pairs to the United States from other countries, and is unrelated to this lawsuit.

**Memorandum Opinion and Order – Page 4**

Operations purchased Explorer Learning's assets in early 2004, it has also used the term "goNANI," and has used the domain name www.gonani.com.

Plaintiffs first used the term "GoNannies" in commerce in July 2003. Flemming registered the Internet domain name www.gonannies.com on or about July 9, 2003. Fleming applied for federal registration of the mark "GO NANNIES" on or about July 28, 2003, and the United States Patent and Trademark Office granted her application and registered the mark on August 23, 2005. Plaintiffs first learned of Defendants' use of the term "goNANI" in March 2006.

## II.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Legal Standard for Exercise of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that

the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the

forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**B. Analysis**

**1. Specific Jurisdiction**

The court considers first whether it may exercise specific jurisdiction over Defendant Bray-Butler. To reiterate, Dr. Butler argues that this court lacks specific jurisdiction over her and has filed a Declaration in support. *See* Declaration of Jacque Bray-Butler, Ph.D. She has also been deposed by Plaintiffs with regard to the issue of personal jurisdiction and has produced numerous documents

related to the business entities at issue. *See supra* n.1   Plaintiffs' First Amended Complaint contains no allegations that Dr. Butler has any individual personal contacts with Texas. The only allegation in the First Amended Complaint regarding personal jurisdiction and Bray-Butler is that she is a resident of Utah, and that "the Court has jurisdiction over the Defendants because they have sent or caused to be sent products and/or services which they provide into the State of Texas, and are transacting business in the State of Texas with its principal place of business in Murray, Utah." Compl. ¶¶ 5, 11.

According to her Declaration, Bray-Butler is a resident of Utah.  Bray-Butler owned Exploring Learning until its corporate expiration on October 23, 2004.  Exploring Learning was a Utah corporation with its principal place of business in Utah.  Prior to January 1, 2004, Exploring Learning owned, operated and managed a business engaged in providing childcare and doing business as "goNANI."  On January 1, 2004, GoAuPair Operations, American Cultural Exchange and A. William Kapler purchased substantially all of the assets of Exploring Learning.  Bray-Butler never owned, controlled or managed GoAuPair Operations or American Cultural Exchange.  Bray-Butler never personally owned the entity doing business as "goNANI."  *See* Decl. ¶¶ 2-6.  At her deposition, Bray-Butler provided further testimony that she never operated the entity doing business as "goNANI" as a sole proprietorship.  *See* App. to Bray-Butler's Supp. Reply Memo at 20-22.  She also testified that between its inception in 2000 and January 1, 2004, the date GoAuPair Operations and American Cultural Exchange purchased Exploring Learning, the d/b/a GoNani was at all times run by a board of shareholders and a corporate entity, either Childcrest (until approximately July 2002) or Exploring Learning (from sometime in 2002 until GoAuPair Operations purchased its assets).  *See id.*  As to operating the alleged infringing web sites, Bray-Butler testified at her

**Memorandum Opinion and Order – Page 8**

deposition that she never operated the alleged infringing websites in her individual capacity, but that individual in charge of information technology at Childcrest registered the domain name. *Id.* at 7, 11-19. She also testified that she never used the mark goNANI® in commerce in connection with the offering of goods or services to individuals in Texas. *Id.* at 8.

In response to Bray-Butler's motion to dismiss for lack of personal jurisdiction, Plaintiffs contend that the "core issue with respect to Dr. Butler's Motion to Dismiss is whether or not, during any time relevant to this lawsuit, she has ever owned, operated, or managed goNani and/or goAuPair, in her individual capacity." Pl. Resp. at 2. As just set forth, at her deposition, Bray-Butler testified that she never operated the entity doing business as "goNANI" as a sole proprietorship. *See* App. to Bray-Butler's Supp. Reply Memo at 20-22. She also testified that between its inception in 2000 and January 1, 2004, the date GoAuPair Operations and American Cultural Exchange purchased Exploring Learning, the d/b/a GoNani was at all times run by a board of shareholders and a corporate entity, either Childcrest (until approximately July 2002) or Exploring Learning (from sometime in 2002 until GoAuPair Operations purchased its assets). *See id.* In their Supplemental Response, Plaintiffs suggest that various lapses in corporate ownership between 2000 and 2004 should cause the court to conclude that Bray-Butler was operating Childcrest and Explorer Learning as a sole proprietor. The court rejects this argument.

The court has carefully reviewed Bray-Butler's Declaration, her deposition testimony, as well as the tax returns for Childcrest and Explorer Learning which she provided Plaintiffs. The court concludes that Plaintiffs have failed to make out a prima facie case (or to provide anything other than speculation) that Bray-Butler was a sole proprietor of any of the corporate entities that owned the d/b/a "goNANI." Further, the court notes that Plaintiffs in their Supplemental Response re-urge

**Memorandum Opinion and Order – Page 9**

on the court a newspaper article they previously provided in connection with their emergency motion for expedited discovery, and which they contend is evidence that Bray-Butler, in her individual capacity, is (or has been) the founder and owner of goNANI. The article is from the Draper Chamber of Commerce. In the first instance, this article is hearsay and therefore not properly considered in the court's analysis of whether it has personal jurisdiction over Bray-Butler. *See Stuart*, 772 F.2d at 1192 (and cases cited therein) (court may determine jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery). In any event, even were the court to consider the article, the court determines that Plaintiffs' interpretation of the article is unsupported. Plaintiffs assert that the article is evidence that Bray-Butler "owned these businesses in her individual capacity and not in any other capacity." *See* Pl. Resp. at 7. The article neither states nor implies that such is the case. Furthermore, Bray-Butler at her deposition disagreed that the newspaper article was correct.

In short, Absent minimum contacts that represent "purposeful availment" by Bray-Butler of the benefits of the forum state, and given Plaintiffs' failure to meet its burden of establishing a prima facie case over Bray-Butler under its theory that she operated and owned any of the relevant corporate entities in her individual capacity, the court determines that it lacks specific jurisdiction over Dr. Butler.

### 2. General Jurisdiction

The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.9. Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are

very substantial. *See Davis v. Billick*, 2002 WL 1398560 at * 3 (June 26, 2002 N.D. Tex.) (Fitzwater, J.) (citing *Helicopteros Nacionales*, 466 U.S. at 416-19) (concluding there was no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots for training to Texas). In their First Amended Complaint, Plaintiffs have not alleged any facts that typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel, regular conduct of business, or maintenance of bank accounts in Texas. *See generally Middlebrook v. Anderson*, 2005 WL 350578 at *3 n.4 (Feb. 11, 2005 N.D. Tex.) (Fitzwater, J.). Additionally, in her Declaration Bray-Butler states that she has never lived in Texas, has never owned, leased or controlled any real property in Texas, has no family in Texas, has never maintained a telephone or facsimile listing in Texas, and has never personally conducted any business in the State of Texas on behalf of any business entity. *See* Bray-Butler Decl. ¶¶ 7-12. She also states that Explorer Learning is not licensed to do business in Texas, has never owned, leased or controlled real or personal property in Texas, has never maintained any employees, offices or bank accounts in Texas, has never maintained a telephone or facsimile listing in Texas, and has never been subject to paying taxes in Texas. *See id.* ¶¶ 13-17. In light of Bray-Butler's Declaration, and the failure of Plaintiffs to establish a prima facie case of general jurisdiction over Bray-Butler, the court determines that it lacks general jurisdiction over Bray-Butler.

In short, the court determines that Plaintiffs have failed to meet their burden of establishing a prima facie case of specific or general jurisdiction over Defendant Bray-Butler. Accordingly, because the court lacks personal jurisdiction over Bray-Butler, Plaintiffs' claims against her must be dismissed.

### III. Conclusion

For the reasons set forth above, the court **grants** the Motion to Dismiss of Defendant Jacque Bray-Butler, Ph.D. This action with respect to Defendant Jacque Bray-Butler, Ph.D. is **dismissed without prejudice**. As the court lacks personal jurisdiction over Defendant Jacque Bray-Butler, it does not address her alternative motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**It is so ordered** this 13th day of April, 2007.

_____
Sam A. Lindsay
United States District Judge